IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TAKI HARPER, et al.,<br>Plaintiffs, | §<br>§<br>§ | |
| v. | § | No. 3:25-CV-642-L-BW |
| FIRSTKEY HOMES, LLC,<br>Defendant. | §<br>§<br>§<br>§ | Referred to U.S. Magistrate Judge[1] |

# MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Motion to Compel Discovery filed on October 1, 2025. (Dkt. No. 39.) In the motion, Plaintiffs request the entry of a confidentiality order over discovery and also seek an order compelling Defendant FirstKey Homes, LLC to produce discovery in response to certain requests for production. Pursuant to a court order, the parties submitted a Joint Report on October 14, 2025, and the Court held a hearing on the motion on October 31, 2025. (Dkt. Nos. 46, 54.) The Court entered a protective order on October 15, 2025 (Dkt. No. 49), and this order resolves the remainder of Plaintiffs' motion.

For the reasons that follow Plaintiffs' motion to compel is granted in part and denied in part.

## I.  BACKGROUND

Plaintiffs Taki Harper, Shawnte Leigh, and Kelly Williams, on behalf of themselves and others including opt-in plaintiffs, filed this collective action under 29

---

[1] (*See* Dkt. No. 32.)

1

U.S.C. § 216(b) against Defendant FirstKey Homes, LLC alleging claims for unpaid time under the Fair Labor Standards Act ("FLSA"). (*See* Dkt. No. 1 ("Compl.").) On June 10, 2025, the Court entered an initial scheduling order that provides for pre-notice discovery, consistent with *Swales v. KLLM Transport Services, L.L.C.*, 985 F.3d 430 (5th Cir. 2021), so the parties may assess the plaintiffs' similarity of situation.

Plaintiffs' motion to compel, in relevant part, seeks the production all of Plaintiffs' emails and records showing their use of Defendant's software platforms. At issue in the motion are two requests for production ("RFP"):

> RFP No. 4: All emails for Plaintiffs in a searchable .pdf format and in chronological order, which includes, but is not limited to: (a) all emails received or sent by Plaintiffs, regardless if deleted or not, and regardless of whether kept in a specific sub-folder; (b) deleted drafts created by Plaintiffs; (c) all attachments to any of the foregoing; and (d) to the extent not readily identifiable by the email itself, all data necessary to determine time/date created, sent, received and read.
>
> RFP No. 10: All transaction records, software activity records, software login and logout records, and documents reflecting Plaintiffs' usage of any computer/software system utilized by Plaintiffs in performning their work duties during the relevant time period, including but not limited to all documents reflecting the time Plaintiffs access any such systems/software. (The computer/software systems Plaintiffs used include but are not limited to Yardi, RentCafe, Dynamics 365, Dynamics CRM, Outlook, Teams, Keyper Wire Chat, Slack, Vonage, inContact, Skype, and/or any other software system.)

(Dkt. No. 47 ("JR App.") at 9.)

## II. LEGAL STANDARDS

Rule 26 provides for the discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in

2

controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). A party may, under Rule 34, request documents and electronically stored information. *See* Fed. R. Civ. P. 34(a)(1). And, if a party responding to such request "fails to produce documents or fails to respond that inspection will be permitted . . . as requested under Rule 34," Rule 37 authorizes the requesting party to file a motion seeking an order compelling the withholding party to produce the requested discovery. *See* Fed. R. Civ. P. 37(a)(3)(B)(iv).

In *Swales*, the Fifth Circuit addressed proper procedures for FLSA collective actions. In addressing the scope of preliminary discovery, it instructed that

> a district court should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of "employees" is "similarly situated." And then it should authorize preliminary discovery accordingly. The amount of discovery necessary to make that determination will vary case by case, but the initial determination must be made, and as early as possible. In other words, the district court . . . should dictate the amount of discovery needed to determine if and when to send notice to potential opt-in plaintiffs.

*Swales*, 985 F.3d at 441. District courts have considerable discretion in this regard. *See id.* at 443. The burden is on plaintiffs to show that members of the putative collective action are similarly situated. *Id.* at 443 n.65. "To determine whether a plaintiff has met her burden of showing that the putative collective-action members are similarly situated, courts consider three factors: (1) the disparate factual and employment settings of the proposed plaintiffs; (2) the various defenses available to

the defendant which appear to be individual to each proposed plaintiff; and (3) fairness and procedural considerations." *Torres v. Chambers Protective Servs., Inc.*, No. 5:20-CV-212-H, 2021 WL 3419705, at *3 (N.D. Tex. Aug. 5, 2021) (footnote omitted).

### III. ANALYSIS

The Court first considers Plaintiffs' request for their emails. They assert that the emails are necessary for two purposes at this stage. First, they argue that the timing of the emails would show similarity among them by establishing that they worked hours outside scheduled hours and during their lunch breaks. Second, they contend that the substance of the emails would show substantial similarity in tasks performed. Defendant has collected emails for the named Plaintiffs and has offered to (a) provide data showing the date and time of all emails sent by Plaintiffs for their comparison to time records, and (b) produce responsive emails returned by agreed-upon search terms.

Plaintiffs have demonstrated that at least some of the documents requested are relevant. Whether Plaintiffs were similarly required to work during off hours or lunchbreaks is relevant to the notice issues discussed in *Swales*. FirstKey argues that producing all Plaintiffs' emails would be involve a greater burden than is proportionate to the needs of the case. "A party resisting discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Carr v. State Farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459, 463 (N.D. Tex. 2015). This is often done

4

through affidavits or other evidence detailing the nature of the burden.  *See S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006).

The Court is unpersuaded by FirstKey's argument of undue burden for two primary reasons.  First, it does not provide evidence from which the Court may find that the onerousness of the production is disproportionate to the needs of this case.  *See Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 580 (N.D. Tex. 2018) ("A party resisting discovery must show how the requested discovery is overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden."); *see also Grant v. Addiction Centers of Texas, LLC*, No. 3:24-CV-3231-N, 2025 WL 2961998, at *2 (N.D. Tex. Oct. 20, 2025) (granting motion to compel for failure to provide evidence of burden).  Second, even accepting FirstKey's representations about the volume of named Plaintiffs' emails (*see* Dkt. No. 46 at 39), its argument against production is constructed on a burden that it need not undertake.  FirstKey argues that it would have to "review every single one" of the emails "in order to identify Confidential Information prior to production."  (*Id.*)  That does not appear to be the case.  Although the Protective Order requires a party to act in good faith when declaring information confidential and also in maintaining a confidentiality designation when it is challenged, the Court explained at the hearing its view of the differing measures of good faith at these two different points.  A document-by-document assessment does not appear to be necessary.  Even more, Plaintiffs expressed their expectation that FirstKey will produce the emails under a blanket confidentiality designation—and their willingness to accept

5

them that way.  With this, FirstKey's burden argument largely falls away.  For these reasons Plaintiffs' motion is granted as to RFP No. 4.

RFP No. 10 seeks "transaction data" that concerns Plaintiffs' use of FirstKey's systems to accomplish their work.  Plaintiffs argue that software activity records are "essential" to showing their work hours and when they performed work activities.  During the hearing on the motion, Plaintiffs stated that they seek records from the following software systems: Yardi, Vonage and InContact, Outlook, MS Teams, and Dynamics.  FirstKey has agreed to produce activity records for Yardi, Vonage and InContact, Lead, and Zendesk. (Dkt. No. 46 at 28.)  It has offered to produce documents from Outlook and Teams that are responsive to agreed-upon search terms, and it has resisted the production of information from Dynamics.  FirstKey argues that producing all the requested software data that has been requested is unduly burdensome, and it supports its argument with the affidavit testimony of its chief information officer providing some detail concerning the work that would be necessary to produce the information requested.  (*See* Dkt. No. 46 at 28; JSR App. 82.)

Plaintiffs' motion is granted with respect to the production of activity records for Yardi, Vonage and InContact, Lead, and Zendesk.  Considering the parties arguments and the evidence produced—and particularly the full production of Plaintiffs' emails, the Court concludes that the full production of additional Outlook and Teams data is disproportionate to Plaintiffs' needs in this case.  FirstKey is ordered to produce Outlook and Teams messages responsive to agreed-upon search

terms. The parties are directed to negotiate search terms to be applied to the instant messages.[2] The Court denies the motion with respect to data from Dynamics. Although Plaintiffs generally characterize the discovery as essential, they have not demonstrated how the data from this particular platform—considering the data ordered produced by this order—outweighs the burden of its collection and production.

Finally, Plaintiffs state in their motion that FirstKey, in response to interrogatories, "served a litany of general and boilerplate objections and refused to fully answer any of the interrogatories." (Dkt. No. 39 at 7.) Based on the information provided in the Joint Status Report and hearing, the Court concludes that attempts to resolve the issues through attorney conference have not yet been exhausted. The Court denies the motion to compel without prejudice with respect to Defendant's responses to interrogatories.

## IV. CONCLUSION

Plaintiffs' motion to compel (Dkt. No. 39) is **GRANTED** in part and **DENIED** in part. FirstKey is ordered to produce emails drafted, sent, and received by the named and opt-in Plaintiffs and is ordered to produce Plaintiffs' activity records from software platforms Yardi, Vonage and InContact, Lead, and Zendesk. Additionally, the parties are **ORDERED** to negotiate search terms to apply to instant messages in Outlook and Teams.

---

[2] The parties are expected to negotiate search terms in good faith. If they are unable to agree to search terms, either party may, within 21 days, seek court intervention.

**SO ORDERED** on November 17, 2024.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE